TYREE R. WEBB,

Plaintiff,

v.

TECO BARGE LINE, INC.,

Defendant.                                                  No. 07-514-DRH

## ORDER

**HERNDON, Chief Judge:**

This admiralty case was tried by bench trial over the course of two days. Because the case was a bench trial, the Court took several evidentiary motions under advisement and allowed the trial to proceed before ruling upon them. See *Metavante Corp. v. Emigrant Savs. Bank*, 619 F.3d 748, 760 (7th Cir. 2010) ("Although we have held that the court in a bench trial need not make reliability determinations before evidence is presented, *In re Salem*, 465 F.3d 767, 776-77 (7th Cir. 2006), the determinations must still be made at some point."). Now the Court must rule on the following pending motions: 1) defendant Teco Barge Line, Inc.'s motion to exclude medical causation opinions of Dr. Keith Starkweather (Doc. 79); 2) defendant's motion to exclude medical causation opinions of Dr. Robert Lee (Doc. 85); 3) defendant's motion to exclude medical causation opinions of Dr. Michael McGhee (Doc. 89); 4) plaintiff Tyree R. Webb's motion in limine to exclude any testimony, evidence, or argument that defendant considered potential damage caused by its barge fleet in determining not to evacuate plaintiff

prior to the hurricane (Doc. 94); 5) plaintiff's motion to strike affirmative defenses pursuant to Federal Rule of Civil Procedure 12(b)(6) and 15(a)(2) (Doc. 110); and 6) plaintiff's objection to impeachment of any witness by conviction of a crime (Doc.116).  For the reasons that follow, defendant's motions to exclude are denied (Docs. 79, 85, & 89), plaintiff's motion in limine is denied as moot because defendant admitted liability, plaintiff's motion to strike affirmative defenses is granted, and plaintiff's objection to impeachment of any witness by conviction of a crime is granted.  Because the Court considers the motions to exclude first, it begins by setting forth the standard governing those motions.

## I. Legal Standard

Federal Rule of Evidence 702 and in particular *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), govern the admissibility of expert testimony. The *Daubert* standard applies to all expert testimony, whether based on scientific competence or other specialized or technical expertise.  S*mith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999)).  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.

*Daubert* clarified that Rule 702 charges the district court with the task of ensuring expert testimony is both relevant and reliable. *Daubert*, 509 U.S. at 589. Courts in the Seventh Circuit conduct a three-step analysis. *Ervin v. Johnson & Johnson, Inc.,* 492 F.3d 901, 904 (7th Cir. 2007).[1] First, the district court must determine whether the person whose testimony is offered is in fact an expert, as codified in Rule 702 through "knowledge, skill, experience, training or education." *Id.* (citing FED. R. EVID. 702). Notably, although "extensive academic and practical expertise" sufficiently qualify a potential witness as an expert, *Bryant v. City of Chi.,* 200 F.3d 1092, 1098 (7th Cir. 2000), "Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience," *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 591 (7th Cir. 2000); see also *Smith*, 215 F.3d at 718 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.") (citing *Kumho*, 526 U.S. at 156)).

Secondly, the district court must determine whether the expert's reasoning or methodology is reliable. *Ervin,* 492 F.3d at 904; see *Mihailovich v. Laatsch*, 359 F.3d 892, 918 (7th Cir. 2004) (citing *Kumho*, 526 U.S. at 147). Specifically, the testimony must have a reliable basis in the knowledge and experience of the relevant discipline, *Kumho*, 526 U.S. at 149 (internal quotations removed),

---

[1] The Court notes that the Seventh Circuit has also described the *Daubert* analysis as a two-step process. See *Chapman v. Maytag Corp.,* 297 F.3d 682, 686 (7th Cir. 2002). However, as *Chapman* simply combines the first two steps described in *Ervin* as a single test of reliability, whether the analysis is described as a three-step or two-step process does not substantively change the Court's analysis.

consisting of more than subjective belief or unsupported speculation. *Chapman*, 297 F.3d at 687; *Daubert*, 509 U.S. at 590.

Further, as to reliability, *Daubert* provided the following non-exhaustive list of relevant factors: "(1) whether the scientific theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the theory has been generally accepted in the scientific community." *Ervin*, 492 F.3d 901, 904 (7th Cir. 2007) (citing *Daubert*, 509 U.S. at 593-94). However, there is no requirement that courts rely on each factor, as the gatekeeping inquiry is flexible and must be "tied to the facts" of the particular case. *Kumho*, 526 U.S. at 150 (quoting *Daubert*, 509 U.S. at 591); see also *Chapman*, 297 F.3d at 687. Thus, "the role of the court is to determine whether the expert is qualified in the relevant field and to examine the methodology the expert has used in reaching his [or her] conclusions." *Smith*, 215 F.3d at 718 (citing *Kumho,* 526 U.S. at 153).

The district court possesses "great latitude in determining not only *how* to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009) (citing *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007)). Accordingly, the court's gatekeeping function requires focus on the expert's methodology; the "[s]oundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact." *Smith*, 215 F.3d at 718 (citing *Daubert*, 509 U.S. at 595; *Walker,* 208 F.3d at 587). However, an expert

must explain the methodologies and principles that support his or her opinion; he or she cannot simply assert a "bottom line" or *ipse dixit* conclusion. *Metavante Corp.*, 619 F.3d at 761 (quoting *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010)).

Lastly, the district court must consider whether the proposed testimony will assist the trier of fact in its analysis of any issue relevant to the dispute. *See Smith*, 215 F.3d at 718; *Chapman*, 297 F.3d at 687; *Daubert*, 509 U.S. at 592. It is crucial that the expert "testify to something more than what is 'obvious to the layperson' in order to be of any particular assistance to the jury.'" *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001) (quoting *Ancho v. Pentek Corp.,* 157 F.3d 512, 519 (7th Cir. 1998)). However, the expert need not have an opinion as to the ultimate issue requiring resolution to satisfy this condition. *Smith,* 215 F.3d at 718 (citing *Walker*, 208 F.3d at 587).

Resolution of an expert's credibility or the correctness of his or her theories under the particular circumstances of a given case is a factual inquiry, left to the jury's determination after opposing counsel has cross-examined the expert at issue as to the conclusions and facts underlying his or her opinion. *Smith*, 215 F.3d at 718 (citing *Walker*, 208 F.3d at 589-90). Thus, "[i]t is not the trial court's role to decide whether an expert's opinion is correct. The trial court is limited to determining whether expert testimony is pertinent to an issue in the case and whether the methodology underlying that testimony is sound." *Smith*, 215 F.3d at 718 (citing *Kumho*, 526 U.S. at 159 (Scalia, J., concurring) (stating that the

trial court's function under *Daubert* is to exercise its discretion "to choose among reasonable means of excluding expertise that is fausse and science that is junky")).

While the Seventh Circuit has assumed that *Daubert's* requirements of reliability and relevancy continue to apply in a bench trial, the court has recognized that "the usual concerns of the rule—keeping unreliable expert testimony from the jury—are not present in such a setting . . . ." *Metavante Corp.*, 619 F.3d at 760. "It is not that evidence may be less reliable during a bench trial; it is that the court's gatekeeping role is necessarily different." *In re Salem*, 465 F.3d at 777. "Nevertheless, the 'court must provide more than just conclusory statements of admissibility or inadmissibility to show that it adequately performed its gatekeeping function.'" *Id.* (quoting *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010)).

## II. Analysis

As indicated above, the Court begins with the defendant's motions to exclude and will then rule on plaintiff's motion to strike and objection. As stated above, plaintiff's motion in limine is denied as moot.

*A. Motion to Exclude Dr. Starkweather's Causation Testimony*

Defendant posits that the Court should exclude Dr. Starkweather's causation testimony because he offered his causation opinion without considering critical facts and therefore his causation opinions are unreliable, irrelevant, and should be excluded. Specifically, defendant suggests that Dr. Starkweather's

testimony was based solely upon what plaintiff's counsel told him before his deposition, and that Dr. Starkweather was unaware plaintiff was treated for knee and ankle pain before Hurricane Katrina, that plaintiff did not complain of knee or ankle pain during the six months after Hurricane Katrina, and that plaintiff's first complaints of knee and ankle pain after Hurricane Katrina followed a motorcycle accident in March 2006. Plaintiff contends that he provided Dr. Starkweather with information regarding Hurricane Katrina, that Dr. Starkweather's opinions are supported by the record, and that plaintiff's motorcycle accident was caused by the Katrina incident.

Here, defendant does not contest that Dr. Starkweather is an expert. Rather, defendant contends that Dr. Starkweather's causation testimony is flawed because he did not know certain facts about plaintiff. Of course, plaintiff disputes that Dr. Starkweather did not know these facts. Defendant's argument misses the mark. Defendant does not quarrel with the reasoning or methodology applied by Dr. Starkweather, but rather objects to the conclusions he reached based upon what Dr. Starkweather knew about plaintiff. These matters, however, go to the weight and/or credibility the Court should give Dr. Starkweather's opinions, not to their admissibility. In fact, Federal Rule of Evidence 703 provides that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." FED. R. EVID. 703. "Unless the court orders otherwise, an expert may state an opinion—and give the reasons for it—with-out first testifying to the underlying facts or data. But the expert may be

required to disclose those facts or data on cross-examination." FED. R. EVID. 705. It was the defendant's job on cross-examination to point out any discrepancies as to the correctness of Dr. Starkweather's opinions based upon facts Dr. Starkweather may or may not have known, which defendant did. The Court considered all of this testimony in determining what weight to give his opinions. Furthermore, Dr. Starkweather's deposition testimony belies defendant's assertions that he did not know that plaintiff had knee and ankle pain for years prior to Hurricane Katrina and that plaintiff did not tell Dr. Starkweather about Hurricane Katrina. Thus, defendant's motion to exclude Dr. Starkweather's causation testimony (Doc. 79) is denied.

### B. Motion to Exclude Dr. Lee's Causation Testimony

Defendant contends that Dr. Lee's causation opinion regarding plaintiff's post-traumatic stress disorder (PTSD) should be excluded because it is speculative, unreliable, and inadmissible under the Federal Rules of Evidence and *Daubert*. Specifically, defendant argues that Dr. Lee's PTSD causation testimony should be excluded because he is neither a psychiatrist nor psychologist, he did not know the criteria for diagnosing PTSD when he made the diagnosis or testified in this case, and because he admitted he was merely offering his PTSD diagnosis as a "layperson." Plaintiff contends that because defendant introduced the same opinion in cross-examining Dr. Starkweather, defendant is precluded from excluding that evidence, and that in any event, any issue defendant takes with regard to Dr. Lee's testimony goes to its weight, not its admissibility.

Indisputably, a medical degree does not qualify a doctor to opine on all medical subjects. *Gayton*, 593 F.3d at 617 (citing *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990)). However, the Seventh Circuit recognizes that often a "physician in general practice is competent to testify about problems that a medical specialist typically treats." *Id.* (citing 29 Wright & Gold, Federal Practice and Procedure, § 6265 (1997)); *Doe v. Cutter Biological, Inc.,* 971 F.2d 375, 385 (9th Cir. 1992) ("The fact that the experts were not licensed hematologists does not mean that they were testifying beyond their area of expertise. Ordinarily, courts impose no requirement that an expert be a specialist in a given field, although there may be a requirement that he or she be of a certain profession, such as a doctor."); *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.,* 388 F.3d 976, 978-79 (6th Cir. 2004); *United States v. Viglia*, 549 F.2d 335, 336 (5th Cir. 1977) (holding that a pediatrician who had degrees in medicine and pharmacology but no experience in treating patients in obesity had sufficient knowledge, training, and education to testify regarding drug's effect on obese persons). Thus, the court must individually evaluate each conclusion drawn to determine whether the purported expert "has the adequate education, skill, and training to reach them." *Gayton*, 593 F.3d at 617.

Here, defendant takes issue with Dr. Lee's testimony that he diagnosed plaintiff with PTSD following Hurricane Katrina. Dr. Lee is plaintiff's family physician who has treated plaintiff for approximately forty years. At his deposition, he testified that he first diagnosed plaintiff with PTSD following his

exposure to Hurricane Katrina. While Dr. Lee is neither a psychiatrist nor a psychologist, Dr. Lee could testify about the treatment he gave plaintiff and the diagnosis he made. See *Gayton*, 593 F.3d at 617 ("[C]ourts often find that a physician in general practice is competent to testify about problems that a medical specialist treats."). While Dr. Lee's medical degree perhaps does not make him an expert in all facets of PTSD, he is certainly qualified to talk about the treatment he provided plaintiff. Moreover, defendant's argument goes to Dr. Lee's credibility or the correctness of his theory which defendant exposed on cross-examination. The Court took this into consideration and did not substantially rely on Dr. Lee's diagnosis testimony regarding plaintiff's PTSD. Thus, the Court denies defendant's motion to exclude Dr. Lee's PTSD causation testimony.

*C. Motion to Exclude Dr. McGhee's Causation Testimony*

Defendant contends that Dr. McGhee's causation testimony should be excluded because Dr. McGhee's testimony is unreliable and irrelevant because Dr. McGhee offered his causation opinion without considering critical facts; specifically that plaintiff was treated for anxiety and depression before Hurricane Katrina. This is essentially the same argument that defendant made with regard to Dr. Starkweather and the result is no different. The fact remains that Dr. McGhee is sufficiently qualified to testify as an expert in this case. Dr. McGhee applied reliable reasoning and/or methodology and his testimony was helpful to the Court. Defendant does not dispute this, but rather contends that "[t]hrough

Page **10** of **15**

no fault of his own, Dr. McGhee offered his causation opinion without considering critical facts." As explained above, any discrepancies about what Dr. McGhee knew or did not know were resolved on cross-examination and go to the weight and/or credibility applied to Dr. McGhee's opinions, not their admissibility. See FED. R. EVID. 703, 705. In any event, Dr. McGhee testified that the evidence cited by defendant regarding Webb's previous history of anxiety and depression did nothing to change his opinion that Hurricane Katrina caused plaintiff's PTSD. It was clear to the Court, even from defendant's own expert, that persons who suffer PTSD often have histories of anxiety and depression. Thus, defendants' motion to exclude Dr. McGhee's causation testimony (Doc. 89) is denied.

*D. Motion to Strike Affirmative Defenses*

Plaintiff contends that the Court should strike defendant's "set-off" affirmative defense because defendant's delay in raising the issue of a set-off until the eve of trial prejudiced plaintiff by precluding him from seeking summary judgment, or even conducting discovery, on the set-off issue. Plaintiff argues that defendant's amendment to add a set-off defense violates Federal Rule of Civil Procedure 15(a)(2) and is prejudicial. Plaintiff also avers that, as a matter of law, defendant cannot set-off insurance proceeds that plaintiff derived from fringe benefits that it offered plaintiff as part of his compensation package. Defendant opposes plaintiff's motion to strike (Doc. 119), contending that its request for a set-off was proper, and that it is entitled to a set-off of payments made under its short-term and long-term disability policies.

Plaintiff's complaint was filed in July 2007. Over the course of several years of litigation, plaintiff amended its complaint twice, resulting in defendant filing amended answers on each occasion. On August 19, 2011, however, a few weeks before the trial was to begin, defendant filed an amended answer to plaintiff's second amended complaint (Doc. 96), admitting fault and adding the affirmative defense that it was "entitled to a set-off against any award for lost wages in the amount of benefits paid to plaintiff under defendant-funded short-term and long-term disability policies." On August 22, 2011, the Court *sua sponte* struck defendant's amended answer for failure to comply with Federal Rule of Civil Procedure 15 and Rule 15.1 of the Local Rules of the United States District Court for the Southern District of Illinois. The next day, defendant filed a motion for leave to file an amended answer to plaintiff's second amended complaint (Doc. 101), stating that defendant sought leave to amend its answer "to admit certain allegations" in the second amended complaint. On August 24, 2011, the Court granted defendant leave to file an amended answer (Doc. 105), and on August 25, 2011, defendant filed its amended answer (Doc. 106), admitting fault but also adding the set-off affirmative defense. On September 1, 2011, plaintiff filed its motion to strike the set-off affirmative defense (Doc. 110). Trial began on September 6, 2011.

Rule 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* This does not

mean, however, that leave to amend should be granted freely. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 759 (7th Cir. 2002). "[A] district court may deny leave to amend on grounds of undue delay, bad faith, dilatory motive, prejudice, or futility." *Guise v. BWM Mortg., LLC*, 377 F.3d 795, 801 (7th Cir. 2004) (citing *Ind. Funeral Dirs. Ins. Trust v. Trustmark Ins. Corp.*, 347 F.3d 652, 655 (7th Cir. 2003)). "[T]he degree of prejudice to the opposing party is a significant factor in determining whether the lateness of the request ought to bar the filing." *Doherty v. Davy Songer, Inc.*, 195 F.3d 919, 928 (7th Cir. 1999). "The district court's decision to grant or deny a motion for leave to file an amended pleading is 'a matter purely within the sound discretion of the district court.'" *Guise*, 377 F.3d at 801 (quoting *J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.3d 815, 819 (7th Cir. 1991)).

Here, defendant concedes that "the set-off should have been included in the motion [to amend]," contending that "[i]t was inadvertently omitted and there was no intent to gain advantage by its omission." While this may be true, it does not change the fact that defendant waited until the eve of trial before it filed its amended answer, and the Court must look to how, if at all, this prejudiced plaintiff, and whether as a result of that prejudice, the Court should strike defendant's set-off affirmative defense.

Plaintiff contends that by waiting until the eve of trial to raise the set-off issue, plaintiff was precluded from seeking summary judgment or conducting discovery on that issue. Defendant posits that plaintiff cannot reasonably claim

prejudice because he had the disability plan information for months and conducted discovery on the issue. The Court cannot condone defendant's act of raising the set-off affirmative defense on the eve of trial, particularly in light of the evidence it presented at trial on the issue for which plaintiff had no opportunity to conduct discovery. The evidence defendant presented on the issue of whether it was a common carrier alone should have been the subject of considerable discovery, the absence of which substantially prejudiced plaintiff. It was quite enough that defendant waited a fatal length of time to plead its affirmative defense, but its all too serious faux pas was made much worse by not alerting plaintiff or the Court to it.[2] The motion to strike the offending amendment is granted.

### E. Objection to Impeachment of Any Witness by Conviction of Crime

Plaintiff also filed an objection to impeachment of any witness by conviction of a crime (Doc. 116), seeking "an order excluding evidence that any witness in this case has been convicted of any crime on the ground that defendant has failed to comply with Rule 609(b)" of the Federal Rules of Evidence. Specifically, plaintiff sought to exclude "designated portions of the deposition of Lynn White . . . that deal with a criminal conviction in 1995." Defendant failed to file a response

---

[2] What makes this situation even more prejudicial is the fact that the actual policies were never produced. At trial, defendant's expert, who plaintiff was unable to depose before trial, testified that "[t]he problem that I think we would have at this point is trying to find the actual policy if one existed at that time. What I'm familiar with is the document that's actually two-stage disability plan description, the first stage being short-term disability, the second stage being long-term disability. I have not seen a policy." Indeed, all that was produced were summaries of the plans that appear to be a part of two separate employee handbooks.

to plaintiff's objection. Pursuant to Local Rule 7.1(c), "[f]ailure to timely file a response to a motion may, in the Court's discretion, be considered any admission on the merits." SDIL-LR 7.1(c). The Court considers defendant's failure to respond such an admission, and finds that even absent the admission, the evidence would not be admissible due to defendant's failure to comply with Federal Rule of Evidence 609(b). See FED. R. EVID. 609(b) ("Evidence of the conviction [if more than 10 years have passed since the witness's conviction or release from confinement, which is later,] is admissible only if: (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use."). Ergo, plaintiff's objection (Doc. 116) is granted.

### III.   Conclusion

For the reasons stated above, defendant's motions to exclude are denied (Docs. 79, 85, & 89), plaintiff's motion in limine (Doc. 94) is denied as moot, plaintiff's motion to strike affirmative defense (Doc. 110) is granted, and plaintiff's objection to impeachment of any witness by conviction of a crime (Doc. 116) is granted.

**IT IS SO ORDERED.**

**Signed this 7th day of March, 2012.**

David R. Herndon
2012.03.07
14:50:13 -06'00'

Chief Judge
United States District Court